of New York State in the Democratic Primary to be held on September 9, 2014.

22 These petitions had four volumes. Volume 1 starts with page One and ends with page 807. Volume 2 starts with page 1 and ends with page 659. Volume 3 starts on page 1 and ends on page 1197. Volume 4 starts on page 1 and ends on page 1402. Thus there are 807 + 659+ 1197 + 1402 or a total of 4065 page numbers on the petition.

23. These petitions were marked valid as appeared on the Board of Elections website at http://www.elections.ny.gov:8080/reports/rwservlet?cmdkey=whofiled

24. However, on August 4, 2014, nearly one month later, the Board of Elections changed them from valid to invalid. The Board of Elections did NOT throw these candidates off because of objections and they were not on the list of candidates read by Commissioner Kellner at the meeting on August 1, 2014 who were thrown off because of objections. Rather, Sam Sloan was thrown off the ballot without any

11

legal basis at the oral request of Kimberly Galvin, the Republican Party Counsel on the Board of Elections.

25. Board of Elections did not have a right to review of the petitions because they had the appearance of validity and there were no specific objections.

26. In July 2015, Defendant Stanley Schlein filed or attempted to file so-called specific objections against a list of 12 candidates one of which was Sam Sloan. The named objector was Defendant Venancio (Benny) Catala. These so-called specific objections were not sufficiently specific in that they were not line-by-line objections and lacked the specificity necessary to review them. They did not state how many signatures the plaintiff had nor how many were required. As a result, CRU or Candidates Record Unit of the New York City Board of Elections ruled that no specific objections had been filed. A copy of this obviously invalid "Specific Objection" is annexed hereto.

27. Because no specific objections had been filed the CRU did not direct the Bronx Board of Elections to produce a

12

Clerk's Report. The Clerk's Report is normally done to help determine the validity of the specific objections. After the clerk's report is prepared the candidates are given a copy and they can agree or disagree with the clerk's report. However, in this case, because there were no specific objections there was no clerk's report.

28. Nevertheless, in spite of the fact that no clerk's report exists, defendant Stephen Edward Kitzinger stated in verbal non-written statements to the New York Supreme Court and to the Appellate Division that there was a clerk's report showing only 431 valid signatures. In fact, no such document exists. It is a figment of the imagination. The number of 431 signatures is a purely hypothetical or invented number they came up with. Plaintiff has repeatedly demanded production of this supposed clerk's report and none has been produced. Plaintiff has also search the records of the Bronx Board of Elections and has questioned the staff of the Bronx Board of Elections and they are unaware of the existence of any clerk's report.

29. In spite of the fact that no valid specific objections were ever filed, Stanley Kalmon Schlein was on July 28, 2015 twice allowed to address the Commissioners of Election to have Sloan and the other candidates thrown off the ballot. It is well established that under the law of the State of New York including Section 16-102 of Election Law if a candidate files facially valid petitions and there are no objections filed then the candidate goes on the ballot. There are specific rules about objections in Section 6-154 such as that General Objections must be filed within three days and Specific Objections must be filed within six days more.

30. Here there were no specific objections filed that complied with the rules of the Board of Elections in the City of New York and with State Law in that the so-called specific objections did not specify the number of signatures on the petition, the number of valid signatures, the number of invalid signatures and the number required for a valid petition.

14

31. The so-called "Specific Objections" were obviously not in compliance with New York Election Law. The so-called "objections" are exactly one sentence long. It states, "The number of signatures in the totality of this petition is less than the 500 signatures that is required for the designation of the candidates for this Party position as set forth on the schedule of respondents". In the box for "Number of Signatures" it puts ? In the Box for Number of Invalid Signatures on Petition it puts N/A.

32. For this reason, the staff of the CRU or Candidates Record Unit of the New York City Board of Elections informed Petitioner Sam Sloan that no specific objections had been filed. Plaintiff was informed of this several times by Matt Graves, by Jimmy and by William all of whom are clerks in the Board of Elections in the City of New York. Petitioner was informed by the CRU of the Board of Elections that no Specific Objections had been filed by Benny Catala or by anybody else for that matter.

33. However, a youtube video appeared entitled

7-9-15 Coversheet Review

https://www.youtube.com/watch?v=Inc-fqTl-lA

It starts at 13:09 and continues at 14:20

34. This video shows Steve Richman, General Counsel of the New York City Board of Elections leafing through pages of the 200 plus page petition at 15:11 and ends at 17:40

35. It was obvious here that Steve Richman is not doing a cover sheet review. He is doing a general search of the petition. This is not allowed. His compatriot even says at one point there is no problem with the cover sheet. It is with the content of the petition.

36. Seeing this obviously improper activity taking place, petitioner rushed down to the courthouse to file this petition to validate even though he had not yet been informed that he was off the ballot.

37. Opposing Counsel Representing the Board of Elections states in his brief and stated several times at the hearing that there was a Clerk's Report filed with the board stating that there were less than the number of required

signatures. This was not true. There was no clerk's report. The reason there was no clerk's report is that the clerk's report is produced after great labor by the Board of Elections staff in which it compares the specific objections with the petition. However, if there is no specific objections in the required format then no clerk's report is prepared. That was the case here.

38. In 2014, Plaintiff Sam Sloan attempted to run for US Congress against incumbent Congressman Jose Serrano. Because Congressman Serrano was out of favor with Bronx Borough President Ruben Diaz Jr., Congressman Serrano, a 20-year incumbent, had to collect his own signatures. The result was almost none of his signatures were valid for reasons such as not registered to vote, bad address, illegible signature, same handwriting and obvious forgery. Congressman had no where near to the required number of signatures.

39. When this matter came to a hearing before the New York City Board of Elections, Serrano was represented by Jerry Goldfeder, author of Goldfeder's Modern Election Law.

17

40. What happened can be seen on youtube.com at by searching for "4-24-14 Designating petition hearing for the June Federal Primary" which reaches the youtube video at https://www.youtube.com/watch?v=f3fSC2xtGNM or more easily by searching https://www.youtube.com/user/VoteTheNewWayNYC

41. When this case was called, both Jerry Goldfeder and Sam Sloan stood up. Then, Board of Elections General Counsel Steven H. Richman objected to Sloan speaking even though Sloan was the aggrieved candidate and thus had the right to speak. Then Goldfeder stated that Sloan's objections had not been served on Serrano but had been served on Goldfeder instead and Serrano himself had been served one day late. Sloan replied that the objector had called Goldfeder pointing out that Serrano was in Washington DC on that day attending a Congressional hearing on Internet security and thus could not be personally served. To this, Goldfeder had replied to the objector to serve him instead at Goldfeder's residence on 360 Central Park West.

42. At the hearing before the New York City Board of Elections, Goldfeder started to reply with the words, "I

did have a conversation with him but I can say ... " He was addressing the statement that the Objector, Mr. Vega, had called him and asked about the address for service of process of the objections and that Mr. Goldfeder had given his own home address as the place for service. Just at the moment that Jerry H. Goldfeder was addressing that question, the President of the Board, Gregory C. Soumas, interrupted Goldfeder saying "Nothing has been said" and thus Mr. Goldfeder was not allowed to complete his sentence. All this can be heard at 6:01 on the youtube.com video. These hearings are now required by law to be posted on youtube.com and therefore it is proper to cite them.

43. It can be clearly seen on the youtube video that at just the moment Goldfeder was going to reply to the question of whether he had agreed to accept service of the line-by-line objections against his client Serrano, the President of the Board of Elections interrupted him and told him not to speak and ruled in his favor.

44. So, one of the best known election lawyers Jerry Goldfeder was interrupted from speaking so that he would

not have to admit that he had agreed to accept service.

45. Had Serrano not been favored by the Commissioners, then Goldfeder would have had to admit that he had agreed to accept service and since Congressman Serrano had almost no valid signatures he would have been thrown off the ballot and Sloan would have been the sole Democratic Party candidate. Since the Democrats always win in the Bronx and the Republicans do not even bother to run candidates, Sloan would have been elected to US Congress. This is an example of how improper and illegal actions by the Board of Elections caused a candidate to be elected to US Congress who would not otherwise have been elected.

46. In 2013, plaintiff attempted to run for Mayor of New York City as a Republican. Plaintiff collected more than enough signatures. Objections were filed by attorney and defendant Daniel Szalkiewicz. The objections were purportedly signed by one Caruso, an elderly man in the most remote section of the Bronx. However, the signatures were obvious forgeries. It was obvious that the forger was Daniel Szalkiewicz. Other than the first letter of each