name there was no similarity between the signature on the objections and the signatures on the buff cards filed with the Board of Elections. Caruso was never produced. Nobody has ever seen this man. Nevertheless, on July 31, 2013, all of these candidates were thrown off the ballot after a hearing by the New York City Board of Elections.

47. Here the so-called Objections by Stanley Kalmon Schlein is discussed on the youtube video which can be seen by searching for

7-28-15 commissioners' hearings - Queens and Bronx

https://www.youtube.com/watch?v=S_Qlw-G0lOc

The discussion starts at 1:07:00 and ends at 1:09:59

48. The Board clerk says at 1:07:34 in the video "there was no line by line objection submitted the Bronx Borough Office Staff Counted."

49. The rule in New York State has long been that the boards of elections do not count the signatures. It is up to the objectors to count the signatures. The objectors normally submit a page by page tabulation of objections showing how many signatures appeared on each page and which

**21**

are valid or not. The specific objections are usually
thick, about 50 to 200 pages long. Then, having that been
done, the clerk goes to work and issues a clerk's report.
The clerk's report is provided to the candidate and to the
objector. They then argue over whether this or that
signature is valid or invalid. If they are not able to
agree, then the matter is submitted to the board and they
vote and after that it may or not go to the courts.

50. That is what happened in all the other cases heard that
day of July 28, 2015. In one case, the clerk had found 497
valid signatures, three less than the 500 that was
required. However, the candidates pointed out three other
valid signatures. The board then voted and by a vote of 7-2
the Commissioners gave the candidate two more signatures,
still leaving one short. However, the objector conceded one
more signature so he could file against them in court.

51. This is the way it is supposed to happen. However, in
the case presented here the board took a short cut and
without specific objections being filed straight away
started counting signatures and did not notify the

22

candidates or their vacancy committee of the results of their count. This is why in the youtube video shows Mr. Sloan at 1:07;20 being befuddled and not knowing what is going on because his name and the names of the other candidates had not been called he had never been notified of any specific objection or any count taking place or the results of that count.

52. What is going here is the Board of Elections is trying to make a new law or a new legal rule. They are trying to say that the Board of Elections has the inherent power to search through any petition that has been filed and search for mistakes and defects. If it finds mistakes it can rule the candidate off the ballot even if no specific objections have been filed. Thus, the Board claims it need not follow a provision of election law. Here is what that provision states:

        6-154.

        Nominations and designations; objections to

1.  Any petition filed with the officer or board charged with the duty of receiving it shall be presumptively valid if it is in proper form and appears to bear the requisite

number of signatures, authenticated in a manner prescribed
by this chapter.

53. The Board of Elections makes the assertion that it need
not follow New York Election Law by citing a case this same
petitioner lost last year: Sam Sloan vs. Kellner, Appellate
Division, Third Department, decided August 21, 2014, Sloan
v. Kellner, 120 AD3d 895 (3d Dept. 2014). Since the
appellant was involved, here is what happened:

54. Petitions were filed nominating Sam Sloan for Governor
and other candidates for Lieutenant Governor, Comptroller
and Attorney General.

55. No objections were filed as to Sam Sloan for Governor
and as to the candidate for Lieutenant Governor. It became
apparent that the incumbent governor, Andrew Cuomo, did not
have one of his minions object because he wanted a weak
candidate he felt he could easily beat running against him,
and this would also split the other outsider candidates.

56. However, general objections were filed against Geeta
Rankoth solely on account of her age and against Neil
Grimaldi for Attorney General.

24

57. Neil Grimaldi, seeing that the Republican candidate for attorney general had filed objections against him, decided to withdraw. However, later the Republican candidate for attorney general withdrew his objections, so Grimaldi decided to reinstate his candidacy. However, the court ruled it was too late to get back in the race.

58. All this time, there was no objections to Sloan. However, at the meeting of the New York State Board of Elections, Kimberly Galvin, the Republican Party representative on the Board of Elections, moved that all the Sloan candidates be removed from the ballot. This was accepted without any discussion by the board. Mr. Grimaldi, who certainly would have objected had he been present, could not be there that day because he was in the Bronx Supreme Court that day representing paying clients all of whom were being thrown off the ballot by Stanley Kalmon Schlein, the same objector here.

59. On appeal, Sloan, who was represented by Grimaldi, and Grimaldi also represented himself, stated that since there were no objections as to Sloan, he should be on the ballot.

25

The Board of Elections stated that in reviewing the objections to Grimaldi they had found that there were less than 15,000 signatures, even though those objections had been withdrawn. Thus, all the candidates named on that petition were off the ballot even though there had been no objections to the other candidates.

60. Also, the Third Department apparently decided that even though no specific line-by-line objections had been filed, the petitioner had to name the objectors in his petition even though they had only filed general objections, not specific objections.

61. Appellants asked for leave to appeal to the Court of Appeals. At the Court of Appeals, instead of arguing the case, Mr. Grimaldi spent his whole time before two judges of that court telling jokes and talking about the time he tried to run for District Attorney four years ago. He never once mentioned the case before that court where he was supposed to be representing clients as well as himself. In view of his insulting behavior before that court, naturally his application was denied. Mr. Grimaldi has since been

**26**

arrested on unrelated charges and evicted from his home-
office. His bar registration has been delinquent for
several years as he has not paid his fees. Few of his
former clients will be asking him to represent them in the
future.

62. What has happened here is without any objections being
filed, neither specific nor general, the staff of the Board
of Elections apparently decided to count the signatures.
They claim that any time anybody claims that there are not
enough signatures, they must start counting the signatures,
not validating the signatures. However, that cannot be the
rule because if it was the rule then everybody would claim
that their opponent did not have enough signatures, putting
the staff of the Board of Elections to the task of counting
all the signatures. The attorney for the Board of Elections
has said that any time an objector alleges that there is an
insufficient number of signatures, then the Board of
Elections must count the signatures. However, this is not
the rule. The rule is a candidate cannot be kicked off the
ballot for insufficient signatures unless someone has filed

specific objections to the number of signatures. There are
a number of cases that support this. The rule is the
Objector must count the signatures and inform the board of
elections how many signatures there are. Then the Candidate
can do his own count and the matter will be resolved at a
hearing. In any event the Board of Elections never does any
counting. If it were otherwise, then every objector would
routinely allege that the number of signatures is
insufficient, requiring the Board of Elections and the tax
payers to do all the work.

63. Another issue concerns the claim that the cover sheet
was attached to the petition in violation of the rule of
New York City that the cover sheet may NOT be attached to
the petition. Mr. Kitzinger did not raise this issue when
appearing before the Supreme Court and this issue was not
raised in the hearing on July 28, 2015 before the Board of
Elections either, but he brought it up in the appeal before
the Appellate Division First Department so it needs to be
addressed here.

64. The Rule of New York State is that the Cover Sheet MUST

be attached to the petitions. However, the rule of New York City is the opposite and the cover sheet may not be attached to the petitions.

65. Since Miss Quinones had in the previous year filed with New York State in Albany and did not know about this special rule in New York City, she naturally bound the cover sheets to the petition in secure velo binding. However, when Jimmy, the Clerk for the Board of Elections at 32 Broadway, pointed out the error, she immediately pulled out a complete duplicate set of cover sheets, signed them and submitted them too, so two complete sets of identical cover sheets were received at the same time.

66. Petitioner believes that this is the reason why this question about the cover sheets was not brought up at the hearing before the Commissioners on July 28. Probably the commission staff did not tell Mr. Kitzinger about the second set of cover sheets.

67. Another issue concerns page numbering. Here Stanley Schlein said, "I am getting to that I am getting your work done for you. The pagination of that petition was to say

the least bizarre it went from 2, 4, 6, 8, 27, 93, it was like the secret code from the CIA and it was within that pagination issue that notification was sent out and no response to that notification occurred thereby mandating its placement on the prima facie."

68. Commissioner Umane responds, "That would be a legitimate reason for being there ..."

69. Again Stanley Schlein interrupts him saying, "Well I was jumping to answer your question."

70. Now, Steve Richman starts speaking saying that page numbering is mandated by statute and they had to check all the pages to see which ones were out of order.

71. All this was improper. Stanley Schlein did not object on the ground of page numbering. His only objection was one sentence long and all said was there were not enough signatures. He should not have been permitted to bring up other issues not raised previously. He is one of the most experienced litigators in Board of Elections cases and has made his career from knocking candidates off the ballot, so he knows the rules.