72. Secondly, he is wrong on the facts. The petition pages were all numbered in sequence. They went 2, 4, 6, 8, 10, 12, 14, 18, 20, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, etc.

73. It is true that there was a mistake in that number 16 was missing and there were two pages numbered 20 but such a trivial error has never been enough to throw a two hundred page petition off the ballot thereby negating the hundreds of hours it took to collect those signatures.

74. On this point, Commissioner Frederic Umane, the almost only commissioner with experience because all the other commissioners are new this year, said at the hearing on July 28 at 34:35:

https://www.youtube.com/watch?v=S_Qlw-G01Oc

> "I am a little surprised to see this on the prima facie calender for technical defects. If there were not enough signatures normally what we would do is wait for someone to file an objection. This is not something we would not do ordinarily including in a prima facie something that don't have the number of signatures on them for a prima facie defect as long as there were signatures filed for that and as for the weight test you don't normally get into these

> technical details, you wait for an objection, so although Mr. Sloan seems to have joined the Dark Side Petitioner am just curious why we are seeing this on prima facie."

75. Here Stanley Schlein interrupts Commissioner Umane from speaking and says:

> "I can elaborate since Mr. Richman is a little slow on the uptake here today the case was ..."

76. This case unless overturned by this court overthrows a large body of election law and practice because the Board of Elections citing the decision last year in what they call the Sloan case Sloan v. Kellner, 120 AD3d 895 (3d Dept. 2014) claims the right to browse the election petitions and if it finds some defect to throw a petition off the ballot without any notice or opportunity for a hearing. This gives the board the discretionary authority to put anybody on the ballot it likes, such as the candidates of Mr. Schlein, and to throw anybody off the ballot it dislikes, such as the 12 candidates on the petition here. This cannot be allowed.

77. At the different hearings that can be played on youtube

the Commissioners and the General Counsel repeatedly show bias against the Plaintiff and against other outsider candidates and in favor of the insider candidates represented by Stanley Schlein. In the Cover Sheet Review of July 9, 2015, Steve Richman says at 15:45 "The person who filed this is Mr. Sam Sloan has a habit of litigating against the board on the ground that we usually discriminate against him and that we single him out for special treatment". Actually, plaintiff did not file the petition and was not even in New York. Plaintiff was just one of the candidates on the list. The fact that Richman keeps mentioning Plaintiff's name shows the prejudicial attitude of the board. Then Richman did not have the prima facie notices sent either to Sloan or the head of the vacancy committee as is normal but had them sent to a homeless shelter at 1921 Jerome Avenue known as "Susan's Place" with more than 200 residents, by waiving the signature requirement the Board of Elections has made it impossible to determine who received this NSN notice or what happened to it. It would have been better to serve it

33

both by regular and certified mail or to serve the head of the Vacancy Committee who is a well known elections personality who maintains an office on Tremont Avenue. Then at the different hearings, every time Sloan tries to speak Richman yells at him saying things such as, "You are not allowed to speak", "Are you a member of the bar?", "You are already off the ballot and cannot appear", whereas Richman is simply general counsel to the board and has no right to speak unless a member of the board asks him to. It can be seen by playing the youtube video that Mr. Stanley Schlein repeatedly interrupts the commissioners while they are speaking and fights with Steve Richman over several issues. Every time Commissioner Umane is saying something in Plaintiff's favor, and there are several instances of this, Stanley Schlein interrupts him and does not allow him to continue. Most importantly, when the board is being polled to see whether these candidates get on the ballot or not, Stanley Schlein interrupts and we cannot hear the vote. At 55:50 Steve Richman arrives at a case where the clients represented by Stanley Schlein were thrown off the ballot

34

for reasons including that the petitions were modified with stickers after the signatures had been collected. Here Steve Richman says that many of these petitions do contain stickers but the objector, Egidio Sementelli (the same person who is on the vacancy committee in the case before this court) does not allege "with particularity" how these stickers were attached to the petitions and thus the objections to them were invalid. Here it is obvious that Mr. Schlein and the board is showing favoritism to Mr. Schlein as when a sticker is attached to a petition with no way to determine whether the sticker was attached before or after the witness signed it is obviously invalid. Steve Richman's statement that the Board would not normally rule on this type of allegation is simply not true. It is just plain common sense that the stickers that were attached changing the addresses of the candidates must have been attached after the petitions were signed because otherwise the petitions would simply have been reprinted with the correct address on them. Thus the petitions submitted by Stanley Kalmon Schlein were obviously invalid and yet the

board passed them.

78. The Supreme Court Judge Carter said that he could decide this case without viewing the youtube videos. This itself is reversible error as Petitioner insisted that the two videos be watched. The videos are now required to be kept and if he had viewed them he would have realized that his decision was wrong in several respects.

79. Counsel for the Board of Elections claims that this case was moot because Petitioners did not get a second index number and file a new second case against the hearings before the Commissioners of Election and serve a new order to show cause. However, this cannot be the rule because the hearing before the Commissioners of Election concluded on July 29, 2015 and Petitioner would have three days after that to serve a new order to show cause, so the date for service would have been Monday, August 3, 2015 at 12:00 midnight. However, by then the objector had already intervened and appeared in this case. It would have been ridiculous to send a process server out to the remote area of City Island in an attempt to serve him when he was

already in court at a hearing before Judge Carter.

80. Petitioners contend that this case should be set for a fact hearing. Petitioners will show that for years the Board of Elections has been abusing its authority by throwing perfectly qualified candidates off the ballot. Because the Commissioners of Elections are appointed by the Democratic and Republican Party State and County Chairmen, who are not elected officials, these party bosses have a vested interest in protecting their favored candidates and preventing any insurgents from within the party such as the candidates here or from outside from getting on the ballot.

81. Petitioner spent seven years fighting cases against the United States Securities and Exchange Commission and lost many times but then finally won The Armageddon, the decisive battle before the United States Supreme Court. SEC vs. Samuel H. Sloan, 436 US 103 (1978)

82. Plaintiff contends that under many court decisions including The Board of Estimates vs. Morris, 489 US 688 (1988) the entire set-up is unconstitutional. The standard is "one man one vote" and is the established law of the

37

nation, Gray v. Sanders, 372 U.S. 368 (1963), Reynolds v Sims, 377 U.S. 533 (1964); Baker v. Carr, 369 U.S. 186 (1962); Gaffney v. Cummings, 412 U.S. 735 (1973); Seaman v. Fedourich, 16 NY 2d 94; Moore v. Ogilvie, 394 U.S. 814 (1969)

83. The Board of Estimates vs. Morris, 489 US 688 (1988) governs this case rather than the much earlier decision of Sailors et al vs. Board of Education of Kent et al, 387 US 105 (1967) because the New York State Board of Elections is much more similar to the Board of Estimates of the City of New York and the fact is that the Board of Estimates case is later.

84. Petitioner contends that the New York State Board of Elections is an Unconstitutional Body and this case best demonstrates why it is unconstitutional. The New York State Board of Elections consists of four Commissioners. Two are appointed by the State Democratic Party Chairman and the other two are appointed by the State Republican Party Chairman.

85. Where are the attorneys for the Green, Conservative, Working Families and Independence parties? Why cannot the millions of voters with no party affiliation be allowed to have some say in who is allowed to run for election?

86. The New York State Board of Elections violated the equal protection clause and One Man One Vote of the Constitution as clearly specified by the US Supreme court in <u>Baker vs. Carr</u>, 361 US 186, <u>Reynolds vs. Sims</u>, 377 US 533, <u>Board of Estimate of City of New York v. Morris</u> 489 U.S. 688 (1988), <u>Avery v. Midland County</u>, 390 U.S. 474 (1968)

87. By being selective as it is has the same basic constitutional violations as the basis of the board of estimates because one voter in Richmond county has same leverage as a voter in Kings County.

88. The New York State Board of Elections gives equal weight pursuant to Republican Party and Democratic Party voters although there are more hundreds of thousands more Democrats than Republics and violates the constitution not giving to representatives of millions of voters in groups

not in existence when state constitution was written giving candidates who got over 50,000 votes party status. Also, more non party voters should have more status than Republicans.

89. All this violates one man one vote

90. Board of Elections operates in basic violation of democratic process in that New York City election inspectors are chosen by the board in a prejudicial way because of their party statue which insures that they are prejudiced. They are expected to vote for the candidates selected by the Republican or Democratic chairman making it virtually impossible for a non selected person to win an election. This violates fundamental fairness and the constitution.

91. This case fundamentally violates the rights to those who signed petitions for the slate of candidates by the way the board of elections has operated as aforementioned.

92. Because the Board of Elections composition is intrinsically violative of the United States Constitution Equal Protection Clause and One Man One Vote it should be